Sarah E. Derry, AK No.: 2006050
BARNARD IGLITZIN & LAVITT LLP
18 W Mercer St, Suite 400
Seattle, WA 98119
Tel: (206) 257-6021
Fax: (206) 378-4132
derry@workerlaw.com

*Attorney for Defendants International Brotherhood
of Teamsters and Teamsters Local Union 769*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| JEREMY WOOD,<br><br>Plaintiff,<br><br>v.<br><br>INTERNATIONAL BROTHERHOOD OF TEAMSTERS; TEAMSTERS LOCAL UNION 769; and NORTHERN AIR CARGO,<br><br>Defendants. | CASE NO. 3:24-cv-00053-HRH |

**DEFENDANTS INTERNATIONAL BROTHERHOOD OF TEAMSTERS AND TEAMSTERS LOCAL 769'S MEMORANDUM OF POINTS AND <u>AUTHORITIES IN SUPPORT OF THEIR MOTION TO DISMISS</u>**

### I. INTRODUCTION

Defendants International Brotherhood of Teamsters ("IBT") and Teamsters Local 769 ("Local 769"), jointly ("Defendants" or "Union Defendants") submit this Memorandum of Points and Authorities in support of their Motion to Dismiss the Complaint. For the reasons set forth herein, the motion should be granted and the

DEFENDANT UNIONS' MOTION TO DISMISS– Page 1
Case No. 3:24-cv-00053-HRH

18 WEST MERCER ST., STE. 400 **BARNARD**
SEATTLE, WASHINGTON 98119 **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132 **LAVITT LLP**

Case 3:24-cv-00053-SLG   Document 25   Filed 06/13/24   Page 1 of 17

Complaint should be dismissed with prejudice.

This matter arises from Jeremy "Jay" Wood's ("Wood" or "Plaintiff") termination from employment on April 25, 2022, from Northern Air Cargo, Inc. ("the Company" or "NAC") for Plaintiff's observed performance deficiencies and his failure to qualify in his Boeing 767 First Officer training effort. Specifically, Plaintiff failed to complete the required Initial Operating Experience ("OE") within a reasonable period of time.

While Plaintiff's Complaint largely focuses on the legitimacy of the Training Review Board ("TRB"), which was convened by NAC to evaluate Wood's performance and his failure to complete the OE, as well as "anomalies" in Plaintiff's treatment and performance evaluation, the Court need not engage in any factual determinations concerning the merits of his termination grievance. That is because the crux of the Complaint is that Plaintiff, as an airline employee, despite progressing through the grievance process, was somehow deprived "access [to] the grievance and arbitration process mandated by Section 184 of the RLA, with or without the certified union as a party". Complaint, ECF 1 at 5.

In his Complaint, however, Plaintiff relies on caselaw pertaining to railroad employees that is unpersuasive and ignores the clear and unambiguous language of the controlling Collective Bargaining Agreement ("CBA") which states the Company and the Union are the *only* parties to a system board proceeding. Accordingly, Plaintiffs have failed to state a single plausible claim against the Defendants in the Complaint, and the Defendants respectfully request that the Court dismiss the Complaint with prejudice.

DEFENDANT UNIONS' MOTION TO DISMISS– Page 2
Case No. 3:24-cv-00053-HRH

18 WEST MERCER ST., STE. 400  BARNARD
SEATTLE, WASHINGTON 98119  IGLITZIN &
TEL 800.238.4231 | FAX 206.378.4132  LAVITT LLP

Case 3:24-cv-00053-SLG   Document 25   Filed 06/13/24   Page 2 of 17

## II. STATEMENT OF RELEVANT FACTS

Wood began working with NAC in September of 2018. At the time of his discharge, Wood was based out of Daniel K. Inouye International Airport ("PHNL") in Honolulu, HI. As a pilot, Wood was covered by the Collective Bargaining Agreement entered into between the IBT Airline Division and NAC, that was in effect from July 24, 2018, through July 23, 2023 ("CBA"), attached here as Braswell Decl. Ex. 1[1].

Wood was discharged on April 25, 2022 for observed performance deficiencies and failing to qualify as a First Officer in his training evaluation flights. *See* Termination Letter, Decl. Ex. 2. Specifically, because Wood failed to complete the required Initial Operating Experience ("OE") within a reasonable period, NAC convened a Training Review Board ("TRB") meeting to evaluate Wood's past performance and his failure to complete the OE. *See* Training Review Board Report, Decl. Ex. 3. Both Wood and his union representatives, David Mantay and Eric Stoltz, attended the TRB meeting. *Id.* During the meeting, Wood was granted an additional three flights, consisting of two legs of flight training and an assessment flight, as a final opportunity to qualify as a First Officer. *Id.* It was made clear that if his performance did not improve, Wood would not qualify and thus, be ineligible to work as a First Officer. Decl. Ex. 2 ("The evaluation could have two possible results…your training would end, and your employment would terminate due to an inability to qualify. You and the IBT's representative understood that recommendation from the TRB and did

---

[1] All exhibits referenced herein are attached to the Declaration of D. Marcus Braswell, Jr. in support of the Union Defendants' Motion to Dismiss.

DEFENDANT UNIONS' MOTION TO DISMISS– Page 3
Case No. 3:24-cv-00053-HRH

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

not dispute that was an appropriate and acceptable course of action."). Both Wood and his union representatives agreed to this resolution. *Id.; see also* Decl. Ex. 3 ("All participants agreed to have an assessment flight with a Check airman").

After the TRB meeting, Wood completed the three flights, in addition to two extra flights, totaling five flights. Decl. Ex. 3**.** Despite the extra flights, Wood's performance remained subpar. *Id.* Multiple training instructors and crew members reported that Wood was unable to perform basic tasks and was unpredictable and unsafe. *Id.* Specifically, the instructors noted that Wood was graded "below standard for situational awareness," that he "is unpredictable and often unsafe while hand flying the aircraft," and that "his tendency to fixate and/or overcorrect is also very concerning." *Id.*. As a result, Wood was unable to demonstrate that he could apply his extensive training to the operating environment, leading to his separation from the Company for failure to qualify as a First Officer. Decl. Ex. 2. In the termination letter, the Company explained that Wood's "continued employment would pose an unacceptable risk to [his] follow (sp.) crewmembers, to NAC and to the public." *Id.*

Wood filed a grievance on May 06, 2022, contesting his discharge. In connection with the grievance, Local 769 filed an information request with the Company on June 1, 2022, to investigate the discharge. *See* Union's Information Request, Decl. Ex. 4. The grievance was processed through the procedure outlined in the parties' CBA, and an arbitration was scheduled for February 21 and 22, 2023. On or about February 9, 2023, Local 769 received a proposed settlement agreement from NAC. *See* Proposed Settlement

DEFENDANT UNIONS' MOTION TO DISMISS– Page 4
Case No. 3:24-cv-00053-HRH

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

Case 3:24-cv-00053-SLG    Document 25    Filed 06/13/24    Page 4 of 17

Agreement, Decl. Ex. 5. The proposed settlement agreement included an offer to convert Wood's discharge to a voluntary resignation, a release of any employment related claims, and a payment of $25,000 USD. *Id.*

Local 769 took various steps to assess the strength of Wood's claims against the strength of the proposed settlement they had received. As an initial step, the business agent obtained documents and notes on Wood's performance before and during the evaluation flights to qualify as a First Officer. *See* September 19, 2023 Letter from Local 769, Decl. Ex. 6. Upon review, these documents revealed neither evidence that would contradict the trainers' observations and conclusions during Wood's five training flights, nor evidence that would support any claims of misstatements or misrepresentations regarding Wood's performance. *Id*. Instead, the documents provided a consistent account of Mr. Wood's poor performance, reflected in the evaluations and notes from various instructors and colleagues.

Local 769 also asked their legal counsel to review the documents and analyze the viability of any potential claims for reinstatement. *Id*.; *see also* March 2, 2024 Letter from M. Braswell, Decl. Ex. 7. Both legal counsel and Local 769 then reached out to IBT Airline Division representatives to discuss whether they had brought any similar cases to arbitration. Decl. Exs. 6, 7. The representatives shared that despite the fact that six (6) crewmembers had recently failed to qualify as First Officers and were terminated, no grievances had resulted and none of the crewmembers had been reinstated or offered to have been reinstated. *Id.* The Union's counsel determined that there was no plausible case to be made for reinstatement. *Id.*

DEFENDANT UNIONS' MOTION TO DISMISS– Page 5
Case No. 3:24-cv-00053-HRH

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

Case 3:24-cv-00053-SLG    Document 25    Filed 06/13/24    Page 5 of 17

After conducting this thorough investigation and deliberation with legal counsel and the IBT, Local 769 determined that the Company's offer was a successful resolution to the grievance that had been processed to arbitration. On September 19, 2023, Local 769 sent Wood a letter transmitting the proposed settlement offer, detailing the steps that were taken to analyze the strength of any claims, and advising Wood that the grievance had been favorably resolved. Decl. Ex. 6. Consequently, Local 769 declined to pursue arbitration considering the favorable settlement offer. Decl. Exs. 6, 7.

### III. STANDARD OF REVIEW

A motion to dismiss challenges the legal sufficiency of the complaint. *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is appropriate where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory. *Id.* (citing *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1988).

A complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. 12(b)(6). Federal Rule of Civil Procedure 8(a)(2) requires that the complaint offer a "short and plain statement of the claim showing that the pleader is entitled to relief." "A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory." *Woods v. U.S. Bank N.A.,* 831 F.3d 1159, 1162 (9th Cir. 2016). To make such a showing, the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Tombly,* 550 U.S. 544,

DEFENDANT UNIONS' MOTION TO DISMISS– Page 6
Case No. 3:24-cv-00053-HRH

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

Case 3:24-cv-00053-SLG    Document 25    Filed 06/13/24    Page 6 of 17

555, (2007).

In a motion to dismiss, all material allegations in the complaint must be taken as true. *Navarro,* 250 F.3d at 732. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "[T]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network,* 18 F.3d 752, 754-55 (9th Cir. 1994).

## IV. ARGUMENT

Plaintiff's only Count against the Defendants alleges Plaintiff is entitled to bring his termination grievance to a hearing before the System Board. ECF 1 at 5.

Plaintiff's Complaint should be dismissed for several reasons. First, Plaintiff was not deprived, in any way, of access to the grievance process. In fact, and as the plaintiff even admits in the Complaint, a grievance for his termination was timely filed and progressed up to the arbitration level. *Id*.

Second, Plaintiff, as an airline employee, does not have an individual statutory right under the RLA to pursue his grievance in arbitration. Not only did Plaintiff enjoy full access to the grievance procedure as he admits in his Complaint, the caselaw Plaintiff cites is neither dispositive nor persuasive. Further, the Complaint wholly ignores the statutory text and Congressional intent of the RLA which supports that it is the company and the union that control the grievance arbitration process set forth in the collective bargaining agreement for airline employees.

DEFENDANT UNIONS' MOTION TO DISMISS– Page 7
Case No. 3:24-cv-00053-HRH

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

Case 3:24-cv-00053-SLG   Document 25   Filed 06/13/24   Page 7 of 17

Third, the Complaint completely ignores the plain language of the controlling CBA which unequivocally states that the Company and the Union are the only parties to an arbitration proceeding. *See* Decl. Ex. 1.

As will be shown below, Plaintiff has not and cannot state any colorable claims against Defendants and therefore, Defendants respectfully asks this Court to dismiss the Complaint in its entirety as to the Union Defendants, with prejudice.

**A. Plaintiff's Complaint Fails to State a Claim Upon Which Relief Can Be Granted as Neither the RLA, nor the Cited Caselaw Support an Individual Right to Arbitration.**

As he admits in the Complaint, Plaintiff enjoyed full access to the grievance procedure. After his termination from the Company, Wood and his union representatives timely filed a grievance protesting his termination. ECF 1 at 5. Local 769 fully investigated the discharge and the grievance was processed through the procedure outlined in the parties' CBA, and an arbitration was scheduled for February 21 and 22, 2023.

On or about February 9, 2023, however, Local 769 received a proposed settlement agreement from NAC. *See* Decl. Ex. 5. The proposed settlement agreement included an offer to convert Wood's discharge to a voluntary resignation, a release of any employment related claims, and a payment of $25,000 USD. *Id*. After an extensive analysis that included review of Wood's training flights, the trainers' observations, as well as review by legal counsel, Local 769 determined there was no plausible case to be made for reinstatement and that the Company's offer was a successful resolution to the grievance that had been progressed to arbitration.

DEFENDANT UNIONS' MOTION TO DISMISS– Page 8
Case No. 3:24-cv-00053-HRH

18 WEST MERCER ST., STE. 400 **BARNARD**
SEATTLE, WASHINGTON 98119 **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132 **LAVITT LLP**

Case 3:24-cv-00053-SLG    Document 25    Filed 06/13/24    Page 8 of 17

On September 19, 2023, Local 769 sent Wood a letter transmitting the proposed settlement offer, detailing the steps that were taken to analyze the strength of any claims, and advising Wood that the grievance had been favorably resolved and that Local 769 would not pursue the grievance to arbitration considering the favorable settlement offer. Decl. Exs. 6, 7.

Plaintiff now alleges that he is entitled to bring his grievance to arbitration on his own without the union. ECF 1 at 5. In support of this contention, Plaintiffs cites several cases, however, they are either not persuasive, binding on this Court, or pertain to airline employees. It is of particular and dispositive importance that Plaintiff is an airline employee and not a railroad employee. That is because railroad employees do indeed have an individual right to progress a grievance through arbitration at the National Railroad Adjustment Board ("NRAB"). Section 181 provides that all of the provisions relating to the railway industry "are extended to and shall cover" the air-carrier industry except for Section 153, which established the NRAB. 45 U.S.C.A. § 181.

Congress explicitly excluded the airline industry from the RLA's minor dispute resolution process provided in RLA Section 153 and did not create an equivalent dispute resolution board. Section 181 provides that "[a]ll of the provisions of subchapter I of this chapter except section 153 of this title are extended to and shall cover every common carrier by air engaged in interstate or foreign commerce." *Id.*

Instead of taking grievances to the NRAB or an NRAB equivalent, the RLA provides that air carriers and unions agree to a dispute resolution mechanism for minor

DEFENDANT UNIONS' MOTION TO DISMISS– Page 9
Case No. 3:24-cv-00053-HRH

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

Case 3:24-cv-00053-SLG    Document 25    Filed 06/13/24    Page 9 of 17

disputes in collective bargaining. Grievances that arise within airline collective bargaining agreements are to be,

> …handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to an appropriate adjustment board, as hereinafter provided, with a full statement of the facts and supporting data bearing upon the disputes.
>
> It shall be the duty of every carrier and of its employees, *acting through their representatives . . .* to establish a board of adjustment of *jurisdiction not exceeding the jurisdiction which may be lawfully exercised by system, group, or regional boards of adjustment, under the authority of section 153 of this title*.

45 U.S.C. § 184. (emphasis added). Therefore, the airline and union control the system board and arbitration process as set forth in their collective bargaining agreements.

In support of his contention, Plaintiff cites *Elgin Joliet & Eastern Railway Co. v. Burley et al.*, 325 U.S. 711, 733 (1945) but that is a railroad case that found an individual had the right to access to the NRAB under Section 3, not an airline system board under Section 204. Similarly, Plaintiff cites *Kaschak v. Consolidated Rail Corp.*, 707 F.2d 902, 903-04 (6th Cir. 1983) which was also a railway case under RLA Section 3 concerning the NRAB.

The cases Plaintiff cites pertaining to airline employees are likewise unpersuasive. Plaintiff quotes *Pyles v. United*, 79 F.3d 1046, 1052 n.9 (11th Cir. 1996) stating that "individual airline employees are entitled to convene special boards of adjustments a matter of statutory right". This statement is not only in a footnote, but the Court failed to analyze

DEFENDANT UNIONS' MOTION TO DISMISS– Page 10
Case No. 3:24-cv-00053-HRH

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

Case 3:24-cv-00053-SLG    Document 25    Filed 06/13/24    Page 10 of 17

the text of Section 204 which pertains to airline employees. Similarly, in *Miklavic v. USAir Inc.*, 21 F.3d 551, 555 (3d Cir. 1994), the Court relied on railway cases without any analysis concerning Section 204.

In *Capraro v. UPS Company*, 993 F.2d 328 (3d Cir. 1993), the Plaintiff, a probationary employee, filed a state law claim after he was terminated, and the employer and the union told him he had no arbitration or grievance rights under the collective bargaining agreement. 993 F.2d at 329. The case turned on whether Capraro's claims were complaints about termination of an employment relationship regulated by the collective bargaining agreement and the RLA and the Court found that they were. *Id.* at 333. *Pratt v. United*, 468 F. Supp. 508, 513 (N.D. Cal. 1978) is a duty of fair representation case that is unrelated to an individual's right to arbitration under the RLA.

Plaintiff also cites *Stevens v. Teamsters Local 2707, Airline, Aerospace & Allied Emp.,* 504 F. Supp. 332, 334, 335 (W.D. Wash. 1980). While that case also involved airline employees, the issue in that case was whether the union improperly denied the grievant access to arbitration as provided for in the collective bargaining agreement in violation of its duty of fair representation. The Court noted that even if employees do not have the same individual right to process grievances as railroad employees do, "the parties have agreed that individual employees have the right to process grievances under the terms of the collective bargaining agreement". *Id.* at 334. The contract in this case explicitly provides that **only the Union and the Company are parties to board proceedings**. *See* Decl. Ex.

DEFENDANT UNIONS' MOTION TO DISMISS– Page 11
Case No. 3:24-cv-00053-HRH

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
**BARNARD IGLITZIN & LAVITT LLP**

Case 3:24-cv-00053-SLG    Document 25    Filed 06/13/24    Page 11 of 17

1. Further, the Court's statement in *Stevens* that employees have a statutory right of system board access is *dicta*.

Plaintiff also cites *Bumpus v. Air Line Pilots Association and UAL*, 606 F. Supp. 3d 845, 857 (N.D. Ill. 2022) as support. However, not only is that case a district court opinion not binding on this court, but the facts are distinguishable to those in the present case. Most notably, in *Bumpus*, days before a Level 2 pre-arbitration hearing was set to hear the Plaintiff's grievance, the union informed the grievant and his counsel they believed the grievance was untimely and they would present this information to the company at the hearing. *Id.* at 850. The company ultimately denied the grievance at Level 2 in a decision that stated, "that if plaintiff was dissatisfied with the outcome, he had the right under the collective-bargaining agreement to appeal to the board of adjustment." *Id*. Once the Plaintiff filed an appeal submission with the union, it was then that the union asserted that an individual grievant did not have the right to appeal to a board of adjustment. *Id*. Further, the collective bargaining agreement in that case requires that the board of adjustment consider "'any dispute properly submitted to it' by the union or airline" and it did not say individual employees could submit a dispute to the board. *Id*.

By contrast, in the instant case, the Union progressed Plaintiff's grievance up to arbitration. The Union and the Company agreed on a neutral arbitrator and scheduled the arbitration for February 21 and 22, 2023. However, before arbitration, the Company offered a settlement that the Union deemed favorable. After a thorough analysis of the

DEFENDANT UNIONS' MOTION TO DISMISS– Page 12
Case No. 3:24-cv-00053-HRH

18 WEST MERCER ST., STE. 400 **BARNARD**
SEATTLE, WASHINGTON 98119 **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132 **LAVITT LLP**

Case 3:24-cv-00053-SLG    Document 25    Filed 06/13/24    Page 12 of 17

merits of the case, the Union decided not to progress to arbitration, given the settlement, and deemed the matter resolved. Decl. Ex. 6.

Further, unlike the Collective Bargaining Agreement in *Bumpus*, Section 20 (E) of the CBA in this case explicitly states that "[T]he Company and the Union shall be the only parties to a Board proceeding." Decl. Ex. 1.

Notwithstanding that Plaintiff does not have a statutory right to arbitration under the RLA, Plaintiff was in no way precluded from accessing the grievance process as he alleges. After the Company offered a settlement for Plaintiff's second termination for poor performance, the Union notified Plaintiff of the favorable settlement and declined to progress the case further, a right well within the Union's purview. *Vaca v. Sipes*, 386 U.S. 171, 191, 87 S. Ct. 903, 917, 17 L. Ed. 2d 842 (1967) (holding an individual employee does not have an absolute right to have his grievance taken to arbitration regardless of the provisions of the applicable collective bargaining agreement.).

**B. It is the Union, not the Individual, who Manages the Grievance Process Brought Under Collective Bargaining Agreements.**

Settled law instructs that unions, and not individual employees, have discretionary power to manage grievances throughout the grievance process brought under collective bargaining agreements. *Vaca*, 386 U.S. at 191.[2] This essential labor law principle allows

---

[2] While *Vaca* involved a claim under the NLRA, the Ninth Circuit has held that *Vaca* applies to claims under RLA because "the RLA and NLRA are substantially identical, and cases decided under one are applicable to the other." *Hernandez v. CIA Mexicana de Aviacion, S.A.*, 879 F.2d 865 (9th Cir. 1989).

DEFENDANT UNIONS' MOTION TO DISMISS– Page 13
Case No. 3:24-cv-00053-HRH

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

Case 3:24-cv-00053-SLG    Document 25    Filed 06/13/24    Page 13 of 17

unions to legitimately control the grievance and arbitration mechanism in their labor contracts.

As a result, unions may eliminate frivolous grievances, work with employers to settle grievances, ensure consistent treatment of complaints, isolate major interpretive issues, and reinforce the union's role in representing all employees. *Pyzynski v. New York Cent. R. Co.*, 421 F.2d 854 (1970) (*citing Cox, Rights Under a Labor Agreement*, 69 HARV.L.REV. 601 (1956)). Allowing individual employees to compel arbitration impermissibly undermines this process, eroding employer confidence in the union's authority, and reverting individual grievants to independent, unsystematic negotiation. *See Mitchell v. Cont'l Airlines, Inc.*, 481 F.3d 225, 232–33 (5th Cir. 2007) (stating that if an employee could compel arbitration without the union's approval, it would "destroy[ ] the employer's confidence in the union's authority and return[ ] the individual grievant to the vagaries of independent and unsystematic negotiation.") (quoting *Vaca*, 386 U.S. at 190).

Thus, bargaining unit employees (such as the Plaintiff) are subject to the union's discretionary power to settle or even abandon a grievance, so long as the union does not act arbitrarily, discriminatorily, or in bad faith. *Vaca* 386 U.S. at 191; *see also Shane v. Greyhound Lines, Inc.*, 868 F.2d 1057, 1061 (9th Cir. 1989), 868 F.2d at 1061 (holding that "unions are free to negotiate and accept settlements even without the grievants' approval.").

Here, the Union was within its discretionary power under the CBA to settle Wood's grievance. Further, Wood has failed to set forth any facts or allegations that suggest that

DEFENDANT UNIONS' MOTION TO DISMISS– Page 14
Case No. 3:24-cv-00053-HRH

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

Case 3:24-cv-00053-SLG   Document 25   Filed 06/13/24   Page 14 of 17

the Union either lacked this power or acted discriminatorily, in bad faith, or arbitrarily in electing to settle the grievance.

In fact, the facts prove otherwise: the Union requested detailed records of Wood's performance; solicited legal advice on the merits of Wood's claims; and extensively discussed the situation with the Union's grievance committee. Therefore, to allow Wood to compel arbitration would result in an intolerable disruption to the established grievance procedure thereby eroding confidence in the union's authority, and reverting individual grievants to independent, unsystematic negotiation.

## V. CONCLUSION

For the reasons stated above, Plaintiff's Complaint fails to establish a valid claim against the Defendants and should be dismissed in its entirety. Plaintiff was not deprived of access to the grievance process, lacks an individual statutory right to arbitration under the RLA, and misinterprets both the relevant caselaw and the controlling CBA. Accordingly, Defendants respectfully request that this Court dismiss the Complaint with prejudice.

I certify that this memorandum contains 3,741 words, in compliance with the Local Civil Rules.

RESPECTFULLY SUBMITTED this 13th day of June, 2024.

BARNARD IGLITZIN & LAVITT LLP

*s/ Sarah E. Derry*
Sarah E. Derry, AK No.: 2006050

DEFENDANT UNIONS' MOTION TO DISMISS– Page 15
Case No. 3:24-cv-00053-HRH

18 WEST MERCER ST., STE. 400  **BARNARD**
SEATTLE, WASHINGTON 98119  **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132  **LAVITT LLP**

Case 3:24-cv-00053-SLG   Document 25   Filed 06/13/24   Page 15 of 17

BARNARD IGLITZIN & LAVITT LLP
18 W Mercer St, Suite 400
Seattle, WA 98119
Tel: (206) 257-6021 | Fax: (206) 378-4132
derry@workerlaw.com

SUGARMAN, SUSSKIND, BRASWELL & HERRERA, P.A.

D. Marcus Braswell, Jr. *(Pro hac vice pending)*
Veronica A. Ucros *(Pro hac vice pending)*
150 Alhambra Cir., Suite 725
Coral Gables, Florida 33134
Tel.:   (305) 529-2801 | Fax: (305) 447-8115
mbraswell@sugarmansusskind.com
VUcros@sugarmansusskind.com

*Attorneys for Defendants International Brotherhood of Teamsters and Teamsters Local Union 769*


INTERNATIONAL BROTHERHOOD OF TEAMSTERS

*s/Emily K. Pantoja*
Emily K. Pantoja *(Admitted pro hac vice)*
25 Louisiana Ave NW
Washington, DC 20001
Tel: 202-624-8710
EPantoja@teamster.org

*Attorney for Defendants International Brotherhood of Teamsters*

DEFENDANT UNIONS' MOTION TO DISMISS– Page 16
Case No. 3:24-cv-00053-HRH

18 WEST MERCER ST., STE. 400  **BARNARD**
SEATTLE, WASHINGTON 98119  **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132  **LAVITT LLP**

Case 3:24-cv-00053-SLG   Document 25   Filed 06/13/24   Page 16 of 17

# CERTIFICATE OF SERVICE

I hereby certify that on the date noted, I filed a true and correct copy of the foregoing document with the Clerk of the Court for the United States District Court, District of Alaska, by using the CM/ECF system. Participants in this Case No. 3:24 cv 00053-HRH, who are registered CM/ECF users, will be served by the CM/ECF system.

| | |
|---|---|
| Mark Joseph Meeker<br>8 Deepwood Drive<br>Danbury, CT 06810<br>914-999-0559<br>mmeeker@ssmplaw.com<br><br>*Attorney for Plaintiff Jeremy Wood* | Lee Seham<br>Seham, Seham, Meltz & Petersen, LLP<br>199 Main Street, Ste Seventh Floor<br>White Plains, NY 10601<br>914-997-1346<br>ssmpls@aol.com<br><br>*Attorney for Plaintiff Jeremy Wood* |
| Sarah E. Josephson<br>Jermain, Dunnagan & Owens, P.C.<br>111 West 16th Avenue<br>Suite 203<br>Anchorage, AK 99501<br>907-563-8844<br>sjosephson@jdolaw.com<br><br>*Attorney for Plaintiff Jeremy Wood* | Connor R. Smith<br>STOEL RIVES LLP<br>510 L Street, Suite 500<br>Anchorage, AK 99501<br>Telephone: 907.277.1900<br>connor.smith@stoel.com<br><br>*Attorneys for Defendant Northern Air Cargo* |

Dated this 13th day of June, 2024 in Seattle, WA.

_____
Esmeralda Valenzuela, Senior Paralegal

DEFENDANT UNIONS' MOTION TO DISMISS– Page 17
Case No. 3:24-cv-00053-HRH

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

Case 3:24-cv-00053-SLG   Document 25   Filed 06/13/24   Page 17 of 17