# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JEREMY WOOD,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>INTERNATIONAL BROTHERHOOD OF TEAMSTERS, *et al.*,<br><br>　　　　　Defendants. | Case No. 3:24-cv-00053-SLG |

## **ORDER ON MOTIONS TO DISMISS**

Before the Court are two motions to dismiss. At Docket 25 is a Motion to Dismiss filed by the International Brotherhood of Teamsters ("IBT") and Teamsters Local Union 769 ("Local 769") (collectively, the "Unions"), and at Docket 26 is a Motion to Dismiss filed by Northern Air Cargo ("NAC"). Plaintiff Jeremy Wood responded in opposition at Docket 29, to which the Unions replied at Docket 37 and NAC replied at Docket 38. Oral argument was not requested by any party and was not necessary to the Court's determination. For the reasons set forth below, both motions are DENIED.

## **BACKGROUND**

NAC is a commercial air carrier and corporation headquartered in Anchorage, Alaska and subject to the provisions of the Railway Labor Act, 45

U.S.C. §§ 151 *et seq.* ("RLA").[1] "IBT is the certified bargaining representative for the NAC pilots and a 'representative' labor union subject to the provisions of the RLA."[2] "Local 769 represents South Florida Teamsters including NAC pilots from Orlando to Key West" and is a "representative" within the meaning of the National Labor Relations Act.[3]

Mr. Wood is a commercial air pilot who was hired by NAC as a First Officer in September 2018.[4] He is an "employee" covered by the RLA.[5] After NAC terminated Mr. Wood's employment in May 2020, Mr. Wood and IBT filed two grievances. NAC responded by reinstating Mr. Wood pursuant to a settlement agreement in October 2021.[6]

On April 25, 2022, NAC notified Mr. Wood of the termination of his employment due to "observed performance deficiencies and a failure to qualify in [his] recent . . . First Officer training effort."[7] On May 6, 2022, Mr. Wood and IBT filed a grievance alleging that this second termination was without just cause.[8] As part of Local 769's investigation, it sent a letter to NAC on June 1, 2022 requesting

---

[1] Docket 1 at ¶¶ 10, 11 (citing 45 U.S.C. §§ 151 First, 181); *see also* Docket 26 at 2.

[2] Docket 1 at ¶ 7 (citing 45 U.S.C. §§ 151 Sixth, 181); *see also* Docket 26 at 2–3.

[3] Docket 1 at ¶ 9 (citing 29 U.S.C. §152(5), (4)); *see also* Docket 26 at 3.

[4] Docket 1 at ¶¶ 4, 12; *see also* Docket 25 at 3; Docket 26 at 3–4.

[5] Docket 1 at ¶ 5 (citing 45 U.S.C. § 151 Fifth); *see also* Docket 26 at 3.

[6] Docket 1 at ¶ 12; *see also* Docket 26 at 4.

[7] Docket 25-6 at 2.

[8] Docket 1 at ¶ 14.

Case No. 3:24-cv-00053-SLG, *Wood v. Int'l Bhd. of Teamsters, et al.*
Order on Motions to Dismiss
Page 2 of 20
Case 3:24-cv-00053-SLG   Document 41   Filed 01/14/25   Page 2 of 20

information about Mr. Wood's employment and alleged infractions.[9] On September 19, 2023, Local 769 sent a proposed settlement agreement to Mr. Wood, and advised him that the agreement—which included a payment of $25,000 and a release of all claims against NAC—was "a most favorable resolution of an unwinnable case."[10] Local 769 advised Mr. Wood that its investigation had produced "very detailed and specific reasons to support the conclusion that a failure to qualify occurred," and therefore, it was unwilling to pursue arbitration on his behalf.[11]

On March 6, 2024, Mr. Wood initiated this action. His Complaint seeks an order compelling arbitration before an impartial System Board of Adjustment.[12] The Complaint alleges that airline employees have an individual statutory right under the RLA to access arbitration, with or without the union as a party.[13]

It appears undisputed that Mr. Wood does not have the authority to compel arbitration under the terms of the Collective Bargaining Agreement ("CBA") between NAC and IBT.[14] The CBA recognizes IBT "as the duly designated and authorized representative" of NAC's pilots for the purposes of the RLA, and it

---

[9] Docket 25-8 at 2–3.

[10] Docket 25-10 at 2; *see also* Docket 25-9 at 2–3.

[11] Docket 25-10 at 2.

[12] Docket 1 at 8.

[13] Docket 1 at ¶ 18.

[14] *See generally* Docket 1; Docket 29.

Case No. 3:24-cv-00053-SLG, *Wood v. Int'l Bhd. of Teamsters, et al.*
Order on Motions to Dismiss
Page 3 of 20
Case 3:24-cv-00053-SLG   Document 41   Filed 01/14/25   Page 3 of 20

establishes a System Board of Adjustment to decide disputes "when such disputes have been properly submitted to The Board *by the Union*."[15]

The Unions and NAC each filed a motion to dismiss.[16] Both sets of defendants assert that Mr. Wood does not have an individual statutory right under the RLA to compel arbitration, and thus the Complaint fails to state a valid claim for relief.[17] NAC asserts further that even if Mr. Wood did have an individual statutory right to compel arbitration, there is no private cause of action for him to enforce it.[18]

The instant motions concern differing interpretations of the RLA. The RLA was "originally passed to regulate conduct in the railroad industry."[19] It is aimed at providing "for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions."[20] 45 U.S.C. § 153 First establishes the National Railroad Adjustment Board ("NRAB") to handle "minor disputes" in the railroad industry, or "grievances . . . which inevitably appear in the carrying out of major agreements and policies[,] or arise incidentally in the course of an

---

[15] Docket 26-1 at 4, 209 (emphasis added).

[16] Docket 25; Docket 26.

[17] Docket 25 at 7; Docket 26 at 2.

[18] Docket 26 at 2.

[19] *Capraro v. United Parcel Serv. Co.*, 993 F.2d 328, 331 n.4 (3d Cir. 1993).

[20] 45 U.S.C. § 151a(5).

Case No. 3:24-cv-00053-SLG, *Wood v. Int'l Bhd. of Teamsters, et al.*
Order on Motions to Dismiss
Page 4 of 20
Case 3:24-cv-00053-SLG   Document 41   Filed 01/14/25   Page 4 of 20

employment."[21] In 1936, the RLA was amended to include the airline industry,[22] and all of the provisions of the RLA except for § 153 and the NRAB were extended to cover air carriers.[23] Instead, 45 U.S.C. § 184 directs air carriers and unions to establish their own boards of adjustment to arbitrate these "minor disputes."[24] Section 184 is the section that is at issue in this case.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## LEGAL STANDARD

A party may seek dismissal under Federal Rule of Civil Procedure 12(b)(6) for a complaint's "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[25] "A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory."[26] In deciding a motion to dismiss under Rule 12(b)(6), "all material

---

[21] *Int'l Ass'n of Machinists v. Street*, 367 U.S. 740, 760 (1961); *Elgin, J. & E. Ry. Co. v. Burley*, 325 U.S. 711, 724 (1945), *adhered to on reh'g*, 327 U.S. 661 (1946). These "minor disputes" are distinguished from "major" ones, which "present the large issues about which strikes ordinarily arise." *Elgin*, 325 U.S. at 724–25.

[22] *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 248 (1994) (citing Railway Labor Act of Apr. 10, 1936, ch. 166, 49 Stat. 1189 (codified at 45 U.S.C. §§ 181–88)).

[23] 45 U.S.C. § 181.

[24] *Capraro*, 993 F.2d at 331.

[25] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[26] *Woods v. U.S. Bank N.A.,* 831 F.3d 1159, 1162 (9th Cir. 2016).

Case No. 3:24-cv-00053-SLG, *Wood v. Int'l Bhd. of Teamsters, et al.*
Order on Motions to Dismiss
Page 5 of 20
Case 3:24-cv-00053-SLG   Document 41   Filed 01/14/25   Page 5 of 20

allegations of the complaint are accepted as true."[27] However, "the trial court does not have to accept as true conclusory allegations in a complaint or legal claims asserted in the form of factual allegations."[28]

## DISCUSSION

### 1. Individuals have a statutory right to pursue arbitration pursuant to 45 U.S.C. § 184.

The parties offer several arguments to support their divergent understandings of 45 U.S.C. § 184. First, the parties provide opposing textual interpretations of the relevant statutory provision. Second, they draw comparisons to other provisions of the RLA to support their interpretations. Third, the parties each rely on a different Supreme Court case. And fourth, the parties discuss the circuit split on this issue, and the purpose-based arguments motivating the split. The Court here discusses the first three sets of arguments together before turning to the fourth one.

The parties provide different textual interpretations of the applicable statutory provision for their assertions that the statute does or does not give individuals the right to pursue arbitration. The statute is 45 U.S.C. § 184, which provides in relevant part that "disputes between an employee or group of employees and a carrier or carriers by air . . . may be referred by petition of the

---

[27] *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

[28] *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016).

Case No. 3:24-cv-00053-SLG, *Wood v. Int'l Bhd. of Teamsters, et al.*
Order on Motions to Dismiss
Page 6 of 20
Case 3:24-cv-00053-SLG   Document 41   Filed 01/14/25   Page 6 of 20

parties or by either party to an appropriate adjustment board" and that "[i]t shall be the duty of every carrier and of its employees, acting through their representatives, . . . to establish [this] board of adjustment."  Mr. Wood emphasizes the fact that the provision describes disputes "*between an employee*" and a carrier,[29] and asserts that since "individual employees indisputably possess the right to participate in the initial stages of the grievance process," they are one of the "parties" within the meaning of the statute who have the authority to refer matters to the board.[30] Defendants instead point to the language describing the duty of carriers and their employees "*acting through their representatives*" to establish boards of adjustment.[31]  Mr. Wood counters that the quoted language "imposes on a carrier and a union a duty to 'establish' a board of adjustment, which does not support [Defendants'] unrelated claim that Section 184 grants the airline and union the power to deny an employee access once the board is created."[32]

The parties then draw comparisons to different provisions of the RLA to bolster their textual interpretations.  Mr. Wood points to the textual similarity between § 184 and § 153 First, which *does* provide individuals the right to pursue

---

[29] Docket 29 at 5.

[30] Docket 29 at 6 (citing *Stevens v. Teamsters Local 2707, Airline, Aerospace & Allied Emps.,* 504 F. Supp. 332, 334 (W.D. Wash. 1980)).

[31] Docket 25 at 10.

[32] Docket 29 at 9.

Case No. 3:24-cv-00053-SLG, *Wood v. Int'l Bhd. of Teamsters, et al.*
Order on Motions to Dismiss
Page 7 of 20
Case 3:24-cv-00053-SLG    Document 41    Filed 01/14/25    Page 7 of 20

arbitration.[33] Section 153 First establishes the NRAB for railroad employees and states:

> The disputes between an employee or group of employees and a carrier or carriers . . . shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes.[34]

Nearly identical in this regard, § 184 provides:

> The disputes between an employee or group of employees and a carrier or carriers by air . . . shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to an appropriate adjustment board, as hereinafter provided, with a full statement of the facts and supporting data bearing upon the disputes.

The Supreme Court has held that individuals have the right to compel arbitration under § 153 First. In *Elgin, Joliet and Eastern Railway Co. v. Burley*, the Supreme Court determined that "[i]t would be difficult to believe that Congress intended . . . to submerge wholly the individual and minority interests, with all power to act concerning them, in the collective interest and agency" because "this would mean that Congress had nullified all preexisting rights of workers to act in relation to their employment . . . except as the collective agent might permit."[35] The Court

---

[33] Docket 29 at 4–6.

[34] 45 U.S.C. § 153 First(i).

[35] 325 U.S. 711, 733–34 (1945).

Case No. 3:24-cv-00053-SLG, *Wood v. Int'l Bhd. of Teamsters, et al.*
Order on Motions to Dismiss
Page 8 of 20
Case 3:24-cv-00053-SLG   Document 41   Filed 01/14/25   Page 8 of 20

reasoned that "the conclusion that Congress intended such consequences could be accepted only if it were clear that no other construction would achieve the statutory aims. The [RLA's] provisions do not require such a construction."[36] The Court ultimately upheld the right of an aggrieved employee to have an "individual hearing before the Board."[37] Mr. Wood maintains that because the Supreme Court in *Elgin* "interpreted nearly identical statutory language as establishing that individuals have a right to compel arbitration," it follows that § 184 necessarily compels the same result.[38]

Defendants assert that § 184 is instead analogous to § 153 Second, which, according to Defendants, requires union involvement to compel arbitration.[39] Section 153 Second relates to special adjustment boards for railroad employees and provides in relevant part:

> If written request is made upon any individual carrier *by the representative of any craft or class of employees of such carrier* for the establishment of a special board of adjustment to resolve disputes otherwise referable to the [NRAB], or any dispute which has been pending before the [NRAB] for twelve months from the date the dispute (claim) is received by the Board, or if any carrier makes such a request upon any such representative, the carrier or the representative upon whom such request is made shall join in an agreement establishing such a board within thirty days from the date such request is made.[40]

---

[36] *Id.* at 734.

[37] *Id.* at 733–34.

[38] Docket 29 at 6.

[39] Docket 26 at 9–10.

[40] Emphasis added.

Case No. 3:24-cv-00053-SLG, *Wood v. Int'l Bhd. of Teamsters, et al.*
Order on Motions to Dismiss
Page 9 of 20
Case 3:24-cv-00053-SLG   Document 41   Filed 01/14/25   Page 9 of 20

The text contemplates the establishment of special boards of adjustment by employee representatives; thus, according to Defendants, "individual employees have no right to bring matters before such boards of adjustment, nor do they have the right to convene them."[41] Defendants contend that the special boards of adjustment in § 153 Second are "indisputably closer in character" to the boards at issue in § 184 than is the NRAB of § 153 First because "[w]hereas the NRAB is a governmental entity created by statute, the boards of adjustment created under § 153, Second and § 184 are creatures of contract created pursuant to agreement between the parties."[42]

To offset Mr. Wood's reliance on the Supreme Court's decision in *Elgin*, Defendants point to *Vaca v. Sipes*, a Supreme Court case interpreting the National Labor Relations Act ("NLRA").[43] There, the Court held that individual employees do not have an absolute right to compel arbitration despite a collective bargaining agreement that states otherwise, because to provide this right would "undermine[]" the contract, "destroy[] the employer's confidence in the union's authority," and lead to a "significantly greater number of grievances" proceeding to arbitration.[44] Mr.

---

[41] Docket 26 at 9 (first citing *O'Neill v. Pub. Law Bd. No. 550*, 581 F.2d 692, 696 n.7 (7th Cir. 1978); and then citing *Bhd. of Locomotive Eng'rs v. Denver & Rio Grande W. R.R. Co.*, 411 F.2d 1115, 1118 (10th Cir. 1969)).

[42] Docket 26 at 10.

[43] Docket 25 at 13 (citing 386 U.S. 171 (1967)); *see also* Docket 26 at 12–13.

[44] 386 U.S. at 191–92.

Case No. 3:24-cv-00053-SLG, *Wood v. Int'l Bhd. of Teamsters, et al.*
Order on Motions to Dismiss
Page 10 of 20
Case 3:24-cv-00053-SLG    Document 41    Filed 01/14/25    Page 10 of 20

Wood contends that *Vaca*'s discussion of the NLRA is less pertinent than *Elgin*'s discussion of the RLA.[45] The Unions counter with a quotation from a Ninth Circuit 1989 unpublished memorandum disposition,[46] to which this Court gives no consideration because quoting or relying on such a statement violates Ninth Circuit Rule 36-3(c).

The Court finds that the language of § 184 compels it to uphold an individual employee's right to pursue arbitration.[47] There are colorable textual interpretations of § 184 on either side; in other words, it is not patently obvious from the text of the provision itself whether individual employees have the right to arbitrate. However, the Court is compelled by the Supreme Court's holding in *Elgin* to only "submerge wholly the individual and minority interests . . . in the collective interest and agency" when "[t]he Act's provisions . . . require such a construction."[48] The provisions of § 184 do not require the Court to do so. On the contrary, § 184's reference to disputes between "an employee or group of employees and a carrier or carriers by

---

[45] Docket 29 at 7–8.

[46] Docket 25 at 13 n.2 (quoting *Hernandez v. CIA Mexicana de Aviacion, S.A.*, 879 F.2d 865 (9th Cir. 1989) (unpublished table decision)).

[47] The Court here takes the opportunity to clarify what its holding does and does not signify. In its reply, NAC states that "[t]he issue before the Court is whether a union should be forced to arbitrate a grievance after the grievance has been substantially processed and a meaningful remedy negotiated." Docket 38 at 6. However, the Court's holding is that individual employees have the right to pursue arbitration, not that a union can be forced to pursue arbitration on an employee's behalf.

[48] *Elgin*, 325 U.S. at 733–34. Defendants take issue with the use of *Elgin* because it is a railroad case. Docket 25 at 10. However, the case is still relevant and that it provides a framework for the Court to interpret the RLA.

Case No. 3:24-cv-00053-SLG, *Wood v. Int'l Bhd. of Teamsters, et al.*
Order on Motions to Dismiss
Page 11 of 20
Case 3:24-cv-00053-SLG   Document 41   Filed 01/14/25   Page 11 of 20

air" and its statement that "disputes may be referred by petition of the parties or by either party to an appropriate adjustment board" can be reasonably interpreted as providing individual employees with the right to compel arbitration. Further, the language describing the "duty of every carrier and of its employees, acting through their representatives . . . to establish a board of adjustment" can reasonably be read to refer only to the initial establishment of such boards and not to one's right to later access those boards, as Mr. Wood suggests.[49]

Defendants' reference to the Supreme Court's decision about the NLRA in *Vaca* does not persuade the Court otherwise, for the Supreme Court has held that although "the NLRA may provide useful analogies for interpreting the RLA, . . . the NLRA 'cannot be imported wholesale into the railway labor arena. Even rough analogies must be drawn circumspectly with due regard for the many differences between the statutory schemes.'"[50] Ultimately, the Court agrees with the Northern

---

[49] The Court notes that Mr. Wood's reliance on *Elgin* for his assertion that the "Supreme Court has interpreted nearly identical statutory language as establishing that individuals have a right to compel arbitration," Docket 29 at 6, is somewhat misleading. While § 153 First and § 184 do contain some nearly identical language, *see* discussion *supra* page 8, the Supreme Court's discussion in *Elgin* mostly focused on other statutory language that does not appear in § 184. *Compare Elgin*, 325 U.S. at 734 ("The Act's provisions do not require such a construction. On the contrary they appear expressly to preclude it. The proviso to Section 2, Fourth in terms reserves the right of 'an employee, individually' to confer with management; and Section 3, First (j), not only requires the Board to give 'due notice of all hearings to the employee * * * involved in any dispute submitted * * *,' but provides for 'parties' to be heard 'either in person, by counsel, or by other representatives, as they may respectively elect.'"), *with* 45 U.S.C. § 184. The Court instead applies the framework from *Elgin* to its own analysis of the text of § 184 in finding that the provision embraces an individual's right to compel arbitration.

[50] *Trans World Airlines, Inc. v. Indep. Fed'n of Flight Attendants*, 489 U.S. 426, 439 (1989) (quoting *Bhd. of R.R. Trainmen v. Jacksonville Terminal Co.*, 394 U.S. 369, 383 (1969)).

Case No. 3:24-cv-00053-SLG, *Wood v. Int'l Bhd. of Teamsters, et al.*
Order on Motions to Dismiss
Page 12 of 20
Case 3:24-cv-00053-SLG     Document 41     Filed 01/14/25     Page 12 of 20

District of Illinois when, in weighing these two Supreme Court cases to address the very question before this Court now, it concluded that "[b]ecause *Elgin* concerned the same statute . . . [the court] find[s] it more persuasive here."[51]

The Court further finds Defendants' comparison between § 184 and § 153 Second to be unpersuasive. As the Eleventh Circuit rightly observed, while some courts have interpreted § 153 Second as requiring union involvement to convene special boards of adjustment for railroad employees, railroad employees have the option to pursue individual grievances at the NRAB, whereas "airline employees do not have [the NRAB] to which they can resort . . . . If the language of § 184 is interpreted in the same manner as that of § 153[ Second], airline employees will have no way to pursue administrative claims without union assistance."[52] Because Congress's "general aim was to extend to air carriers and their employees the same benefits and obligations available and applicable in the railroad industry" when it expanded the RLA to include air carriers,[53] it follows that Congress intended for airline employees to have an individual right to arbitration pursuant to § 184 as their railroad counterparts do pursuant to § 153 First.[54]

---

[51] *Bumpus v. Airline Pilots Ass'n, Int'l*, 606 F. Supp. 3d 845, 856 (N.D. Ill. 2022).

[52] *Pyles v. United*, 79 F.3d 1046, 1052, n.9 (11th Cir. 1996).

[53] *Int'l Ass'n of Machinists, AFL-CIO v. Cent. Airlines, Inc.*, 372 U.S. 682, 685 (1963).

[54] *Pyles*, 79 F.3d at 1052, n.9.

Case No. 3:24-cv-00053-SLG, *Wood v. Int'l Bhd. of Teamsters, et al.*
Order on Motions to Dismiss
Page 13 of 20
Case 3:24-cv-00053-SLG   Document 41   Filed 01/14/25   Page 13 of 20

Both Mr. Wood and Defendants acknowledge that there is a circuit split on this issue, and that the Ninth Circuit has not yet addressed the question.[55] Mr. Wood points to the Third and Sixth Circuits,[56] while Defendants cite to caselaw from the Fifth and First Circuits.[57] The circuit split "mostly stem[s] from differing ideas about the statute's purpose."[58] In holding that airline employees have the right to compel access to their system board pursuant to § 184, the Third Circuit emphasized the RLA's preference for arbitration over litigation and its "interest in seeing that employees are not left 'remediless.'"[59] The Sixth Circuit, in the context of railroad employees and § 153, describes the RLA's structure as one in which

---

[55] Docket 26 at 10–11; Docket 29 at 6.

[56] Docket 29 at 6 (first citing *Capraro v. United Parcel Serv. Co.*, 993 F.2d 328 (3d Cir. 1993); then citing *Miklavic v. USAir, Inc.*, 21 F.3d 551 (3d Cir. 1994); and then citing *Kaschak v. Consol. Rail Corp.*, 707 F.2d 902 (6th Cir. 1983)).

[57] Docket 26 at 11–12 (first citing *Mitchell v. Cont'l Airlines*, 481 F.3d 225 (5th Cir. 2007); and then citing *Bryan v. Am. Airlines*, 988 F.3d 68 (1st Cir. 2021)).

[58] *Bumpus*, 606 F. Supp. 3d at 855.

[59] *Capraro*, 993 F.2d at 336. Defendants attempt to distinguish *Capraro* by stating that "[t]he case turned on whether Capraro's claims were complaints about termination of an employment relationship regulated by the collective bargaining agreement and the RLA and the Court found that they were." Docket 25 at 11. While the posture in *Capraro* is certainly different from the one here, its holding and reasoning are still relevant. As Defendants point out, the Third Circuit in *Capraro* held that the plaintiff's complaints were regulated by the collective bargaining agreement and thus the proper forum for his grievance was the RLA arbitration process, rather than the courts. 993 F.2d at 333–34. Mr. Wood here relies on the portion of the opinion that discusses the plaintiff's assertion that the collective bargaining agreement denied him access to arbitration and thus he needed a judicial forum. *See id.* at 334–36. It was in response to this claim that the Third Circuit stated that "an employer and a union, through a negotiated collective bargaining agreement, cannot deprive a category of employees of access to the grievance and arbitration process. Thus, if the collective bargaining agreement here is read to deny such access, the relevant clauses, to that extent, are invalid and unenforceable." *Id.* at 336. The Third Circuit quoted the Supreme Court for its declaration that an individual employee's rights are "statutory" and can be exercised independently or through the union. *Id.* (quoting *Elgin*, 325 U.S. at 740 n.39).

Case No. 3:24-cv-00053-SLG, *Wood v. Int'l Bhd. of Teamsters, et al.*
Order on Motions to Dismiss
Page 14 of 20
Case 3:24-cv-00053-SLG    Document 41    Filed 01/14/25    Page 14 of 20

the employer, the employee, and the union each "maintain[] a distinct right to enforce the obligations of the other two" so as to protect against "possible collusion between the employer and the union to the detriment of . . . the individuals."[60] The Fifth Circuit, on the other hand, addressing airline employees, held that federal labor statutes "require that the interests of particular individuals be subordinated to the interests of the group" because to find otherwise would "substantially undermine[]" the contractually agreed-upon CBA and return the system to the "vagaries of independent and unsystematic negotiation,"[61] with the First Circuit noting that there was no controlling authority in that circuit holding that an airline employee has an individual right under the RLA when the employee's certified representative has declined to pursue that grievance.[62]

The Court agrees with the Third and Sixth Circuits, as it finds the purpose-based analyses from those circuits to be more persuasive than the analysis from the Fifth Circuit. The RLA's stated purpose is "to provide for the prompt and orderly settlement of all disputes."[63] The RLA set out to accomplish this goal by sending so-called "minor disputes" to arbitration.[64] When drafting the RLA, Congress did

---

[60] *Kaschak*, 707 F.2d at 909–10. Defendants oppose Mr. Wood's use of this case because it pertains to railroad workers. Docket 25 at 10. However, the Court finds its language about the purpose of the RLA relevant to the Court's analysis.

[61] *Mitchell,* 481 F.3d at 232–33 (internal quotation marks omitted) (quoting *Vaca,* 386 U.S. at 191).

[62] *Bryan*, 988 F.3d at 76.

[63] 45 U.S.C. § 151a.

[64] *Capraro*, 993 F.2d at 331.

Case No. 3:24-cv-00053-SLG, *Wood v. Int'l Bhd. of Teamsters, et al.*
Order on Motions to Dismiss
Page 15 of 20
Case 3:24-cv-00053-SLG    Document 41    Filed 01/14/25    Page 15 of 20

not appear to be concerned that these minor disputes would cause any sort of bottleneck; in fact, it reasoned that minor disputes "seldom produce strikes" and that "[b]ecause of their comparatively minor character and the general improbability of their causing interruption of peaceful relations and of traffic, the [RLA] sets them apart from the major disputes."[65] In any case, when interpreting a statutory mechanism whose goal is dispute resolution, the Court is more concerned that a concrete set of disputes could go unresolved than in a warning that the system might be overburdened in resolving such disputes. Furthermore, for all of Defendants' assertions of chaos and overburdening in this approach,[66] there is nothing in the record to indicate that this has been the case in those circuits that have gone in that direction. While the Ninth Circuit has not yet spoken on this issue, a court within this Circuit agreed with the Third and Sixth Circuits when it concluded that "airline employees covered by the [RLA] have a statutory right to process their grievances individually."[67]

---

[65] *Elgin*, 325 U.S. at 724–25 & n.17 (citing *Railway Labor Act Amendments: Hearings on H.R. 7650 Before the Committee on Interstate Commerce*, 73d Cong. 33, 35, 47, 49, 51, 59, 62) (1934)).

[66] *See e.g.*, Docket 26 at 14 ("[A]n overburdened and dysfunctional arbitration process would be all but guaranteed."); Docket 38 at 7 ("[Mr. Wood] fails to address the real concerns posed by the First and Fifth Circuits, namely the disastrous impacts on our labor relations systems of allowing individual access to the grievance and arbitration process without their unions.").

[67] *Stevens v. Teamsters Loc. 2707, Airline, Aerospace & Allied Emps.*, 504 F. Supp. 332, 334 (W.D. Wash. 1980). Defendants are correct that this case is distinguishable in that in *Stevens*, the collective bargaining agreement granted individual employees the right to process grievances. Docket 25 at 11–12 (citing *Stevens*, 504 F. Supp. at 334). However, while the statement in *Stevens* relied upon by Mr. Wood was not necessary for that court's holding, it is still applicable here. The Western District of Washington first found that airline employees have a statutory right to process their grievances individually before noting that "[e]ven if this were not the case, the

Case No. 3:24-cv-00053-SLG, *Wood v. Int'l Bhd. of Teamsters, et al.*
Order on Motions to Dismiss
Page 16 of 20

Case 3:24-cv-00053-SLG   Document 41   Filed 01/14/25   Page 16 of 20

The Unions also assert that Mr. Wood "was not deprived, in any way, of access to the grievance process" because "a grievance for his termination was timely filed and progressed up to the arbitration level."[68] However, Mr. Wood's Complaint is about his right to access an adjustment board pursuant to § 184, which he has not had the opportunity to do.

### 2. There is a private cause of action under 45 U.S.C. § 184.

Defendant NAC next asserts that even if there is an individual right to pursue a grievance, there is no private cause of action to enforce such a right.[69] To support this, NAC points to Supreme Court precedent holding that "the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person,"[70] and directing courts to analyze the four factors identified in *Cort v. Ash* to determine whether Congress intended for there to be a private remedy.[71] NAC analyzes the four factors and

---

Court notes that the parties have agreed that individual employees have the right to process grievances under the terms of the collective bargaining agreement." *Stevens*, 504 F. Supp. at 334.

[68] Docket 25 at 7.

[69] Docket 26 at 16–21.

[70] Docket 26 at 16 (quoting *Cannon v. Univ. of Chi.*, 441 U.S. 677, 688 (1979)).

[71] Docket 26 at 17 (citing *Cort v. Ash*, 422 U.S. 66, 78 (1975)). The four *Cort* factors are as follows: "First, is the plaintiff one of the class for whose especial benefit the statute was enacted . . .? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?" 422 U.S. at 78 (internal quotation marks and citations omitted).

Case No. 3:24-cv-00053-SLG, *Wood v. Int'l Bhd. of Teamsters, et al.*
Order on Motions to Dismiss
Page 17 of 20
Case 3:24-cv-00053-SLG     Document 41     Filed 01/14/25     Page 17 of 20

ultimately concludes that there is no private cause of action under 45 U.S.C. § 184.[72] NAC also points to two district courts—the Northern District of California and the District of New Jersey—that declined to imply a private cause of action under § 184.[73]

The Court rejects the assertion that there is no private cause of action under § 184. Instead, the Court is persuaded by the Sixth Circuit case cited by both NAC and Mr. Wood,[74] which describes the formulation of the RLA as "an agreement worked out between management and labor, and ratified by the Congress and the President" and thus "enforceable as [a] quasi-contract[]."[75] The Sixth Circuit explained that "[t]he argument that a federal cause of action must be explicit within the four corners of the RLA before federal courts may resolve disputes arising thereunder is without merit," citing Supreme Court cases that "determined that the provisions of the RLA are more than mere exhortations to the parties, creating legal obligations enforceable by whatever means appropriate."[76] The Sixth Circuit

---

[72] Docket 26 at 17–21.

[73] Docket 26 at 16, 20–21 (first citing *Bybee v. Int'l Bhd. of Teamsters*, Case No. 18-cv-06632-JD, 2022 WL 3031214, at *4 (N.D. Cal. Aug. 1, 2022); and then citing *Villareal v. United Airlines*, Case No. 2:19-10580, 2021 WL 761723, at *9 (D.N.J. Feb. 26, 2021)).

[74] *See* Docket 26 at 19; Docket 29 at 11.

[75] *Kaschak v. Consol. Rail Corp.*, 707 F.2d 902, 906 (6th Cir. 1983) (internal quotation marks omitted) (quoting *Chicago & N. W. Ry. Co. v. United Transp. Union*, 402 U.S. 570, 576 (1971)).

[76] *Kaschak*, 707 F.2d at 906 (collecting cases). For example, in one case cited by the Sixth Circuit, the Supreme Court held that a provision of the RLA was "more than merely hortatory" because the statute was "an agreement worked out between management and labor, and ratified by the Congress and the President." *Chicago & N. W. Ry. Co.*, 402 U.S. at 576. "Accordingly," the Supreme Court thought it "plain" that the provision at issue "was intended to be more than a mere statement of policy or exhortation to the parties; rather, it was designed to be a legal

Case No. 3:24-cv-00053-SLG, *Wood v. Int'l Bhd. of Teamsters, et al.*
Order on Motions to Dismiss
Page 18 of 20
Case 3:24-cv-00053-SLG    Document 41    Filed 01/14/25    Page 18 of 20

therefore did not apply the *Cort* factors, holding that "a remedy need [not] be implied."[77]

The Court is not persuaded otherwise by either of the district court cases cited by NAC.[78] As NAC acknowledges, the Northern District of California decision "lacks analysis on the subject beyond noting the 'absence of controlling authority that is on point.'"[79] And this Court is not bound by the District of New Jersey case that dismissed the plaintiff's RLA claim after finding that, even if the plaintiff's claim was a "minor dispute" under the RLA, such a claim would be barred by preemption under controlling Third Circuit precedent.[80] While Mr. Wood's Complaint as pled

---

obligation, enforceable by whatever appropriate means might be developed on a case-by-case basis." *Id.* at 577.

[77] *Kaschak*, 707 F.2d at 909 n.13.

[78] In addition, the Court notes that, were it to apply the *Cort* factors, it would likely find an implied private cause of action here. Defendants take particular issue with the second and third *Cort* factors, which relate to whether there is an explicit or implicit indication of legislative intent to create a remedy, and whether a remedy is consistent with the underlying purpose of the legislative scheme. Docket 26 at 18–19. The Court agrees with the Sixth Circuit that "the congressional desire to compensate injured employees and to protect commerce from needless disruption growing out of labor disputes virtually commands a remedy for individual employees." *Kaschak*, 707 F.2d at 909 n.13.

[79] Docket 26 at 16 (quoting *Bybee*, 2022 WL 3031214, at *4). In addition, the *Bybee* court stated that plaintiff's second amended complaint was "not easy to follow" because it "consist[ed] of 619 paragraphs and 111 pages of allegations, 10 legal claims, and 25 separate items of proposed relief. Defendants filed three separate motions to dismiss, and did not coordinate their briefing in any way." 2022 WL 3031214, at *1–2 (citations omitted). The Court notes that while the Ninth Circuit did affirm the district court decision in *Bybee*, in that opinion, the Circuit found that "the section 184 claim was properly dismissed" because the "Plaintiff's grievances had not been timely filed," even "[a]ssuming without deciding that Plaintiffs had the right to arbitrate their grievances without union representation under section 184 of the RLA." *Bybee v. Int'l Bhd. of Teamsters*, Case No. 22-16280, 2023 WL 7381464, at *2 (9th Cir. Nov. 8, 2023).

[80] *Villarreal*, 2021 WL 761723, at *11 (citing *Miklavic v. USAir, Inc.,* 21 F.3d 551, 555 (3rd Cir. 1994).

Case No. 3:24-cv-00053-SLG, *Wood v. Int'l Bhd. of Teamsters, et al.*
Order on Motions to Dismiss
Page 19 of 20
Case 3:24-cv-00053-SLG   Document 41   Filed 01/14/25   Page 19 of 20

does not focus on the interpretation of the CBA, it appears that all parties agree that his grievance constitutes a "minor dispute" as contemplated by the RLA.[81]

## CONCLUSION

For the reasons set forth above, Mr. Wood has a statutory right to pursue arbitration. Therefore, the Motions to Dismiss at Docket 25 and Docket 26 are **DENIED**.

DATED this 14th day of January 2025.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[81] *See Elgin*, 325 U.S. at 724 n.16 (defining minor disputes as "growing out of grievances or out of the interpretation or application of agreements"). The District of New Jersey's statement that minor disputes concern interpretations of collective bargaining agreements, *see Villarreal*, 2021 WL 761723, at *9, appears to have been shorthand, based on statements such as the one from the Supreme Court that minor disputes are "*primarily* grievances arising from the application of collective bargaining agreements to particular situations," *Int'l Ass'n of Machinists v. Street*, 367 U.S. 740, 760 (1961) (emphasis added).

Case No. 3:24-cv-00053-SLG, *Wood v. Int'l Bhd. of Teamsters, et al.*
Order on Motions to Dismiss
Page 20 of 20
Case 3:24-cv-00053-SLG   Document 41   Filed 01/14/25   Page 20 of 20